JOHN ST. PIERRE, Respondent, v CITY OF SYRACUSE et al., Appellants.

Fourth Department, July 2, 1976

*Edward P. Kearse, Corporation Counsel (David Garber* of counsel), for appellants.

*Ali & Gerber (John Butler* of counsel), for respondent.

CARDAMONE, J. The question presented on this appeal is whether the City of Syracuse must pay an injured officer nonservice disability compensation for a second six-month period under section 11-23 of the Syracuse Revised General Ordinances. We conclude that it is not so required.

The facts are not in dispute. On June 17, 1974 respondent, a 38-year-old member of the Syracuse Police Department with 14 years of service, sustained an injury to his Achilles' tendon while playing baseball with his children, as a result of which he was unable to perform his duties as a police officer. He applied for and received nonservice related disability compensation in an amount equal to his salary for a six-month period from June 19 to December 18, 1974 pursuant to section 11-23 of the Revised General Ordinances of the City of Syracuse. This is the maximum period of time for which disability benefits are permitted for one disability.

On January 16, 1975 respondent conceded that he had not fully recovered from his injury but at his request was permitted to return to work. Because he had not fully recovered from his injury he was assigned light and limited duties, as recommended by a physician, in the Communications Department of the Police Department. As a condition to his returning to work respondent agreed to release the city from further liability for any future physical problems caused by his disability. An infection, which required surgery developed in his injured Achilles' tendon, caused respondent to stop working on April 19, 1975.

Thereafter, the Common Council of Syracuse enacted a special ordinance for respondent's benefit granting him additional nonservice related disability benefits in an amount equal to one half of his salary on the date of disability. Respondent accepted these benefits. Later, he commenced this article 78 proceeding alleging that he was entitled to further nonservice related disability compensation for the disability

caused by the injury to his Achilles' tendon under the terms of section 11-23. Special Term in construing section 11-23 concluded that it required the city to pay plaintiff additional benefits in addition to those he had already received. We disagree.

Since this appeal involves the construction of section 11-23 of the Revised General Ordinances of the City of Syracuse, it is set forth as follows: "Officers * * * of the police [department] who shall be * * * disabled through illness or injury not so arising out of and in the course of employment * * * *shall be entitled to receive compensation during any such disability for a period or periods not exceeding in the aggregate six months in any calendar year and not exceeding six months of continuous disability in any event,* in an amount equal to the rate of pay such officer * * * .shall be receiving at the time of such disability * * * No compensation shall thereafter be allowed for any such disability continuing beyond such aggregate period of six months in such calendar year or six months of continuous disability"* (emphasis added).

The city claims that respondent is not entitled to receive disability compensation for a second six-month period arising out of a single injury to his Achilles' tendon. It also contends that respondent St. Pierre released the city from such a claim for compensation upon his return to work. The alleged release is contained in an affidavit in which St. Pierre states that: "I fully understand that no final determination as to full recovery from my injured left achilles tendon can be made at this time. Since this injury is the result of a non-service connected injury on June 17, 1974, I will not hold the City of Syracuse or the Syracuse Police Department liable for any future physical problems that may result from this condition. I am to be assigned to limited duty, as prescribed by Dr. Edward Hughes, Jr., until such time as I am fully recovered from this injury".

Special Term properly concluded that this document indicates no clearly specified intention to release respondent's rights under section 11-23. In view of our conclusion, however, that respondent lacks any right under the ordinance to a second period of disability, we do not need to determine the validity of the release.

It is respondent's contention and Special Term found that the Disability Benefits Law (Workmen's Compensation Law, § 200 *et seq.)* parallels the Revised Ordinance of Syracuse and that its definitions as to disability control. This argument is

based on subdivision 9 of section 201 of the Workmen's Compensation Law which defines disability as the "inability * * * to perform the regular duties of his employment or the duties of any other employment which his employer may offer him at his regular wages and which his injury * * * does not prevent him from performing". Respondent argues that since he was paid his regular wages for work assigned him by his employer he was not disabled. Such would be quite persuasive if the ability to earn "wages" was the sole criteria upon which "disability" is determined. It is not. The Court of Appeals has held that where an employed person's disability arises from an accident, as here, and not from an occupational disease, medical impairment is a "disability" regardless of financial impairment (see *Matter of Ryciak v Eastern Precision Resistor,* 12 NY2d 29, 32). Interpreting analogous provisions of the Workmen's Compensation Law, we conclude that while disability is generally reflected in a diminution of wage earning ability, such is not the sole factor considered. Rather, "disability" under that statute refers to medical as well as financial impairment *(Matter of Mastrodonato v Pfaudler Co.,* 307 NY 592, 598). Under the Workmen's Compensation Law (§ 204, subd 1) successive periods of disability are "deemed" a single period of disability "only if separated by less than three months". The Ordinance of the City of Syracuse (§ 11-23) does not contain a similar provision; nor should such a provision be read into it because the city ordinance, unlike the Workmen's Compensation Law, provides employees with full pay for six months and specifically denies an employee any compensation beyond six months except as authorized by the Common Council. Where there is hardship on an individual employee imposed by a long period of disability the Common Council may authorize up to one half the rate of the employee's pay "during the remainder of such disability or a part thereof". The language of the ordinance expresses a clear intent that disabilities arising from nonemployment activities are to be limited to six months at full pay and, in the discretion of the city legislative body, one-half pay thereafter for a limited period.

We believe that in this case there was one continuing medical disability which commenced on June 17, 1974 when respondent injured his Achilles' tendon while playing baseball. His return to work at full pay at his own request for three months commencing on January 16, 1975 did not inter-

rupt the continuing medical disability. This disability caused respondent to terminate work on April 19, 1975 because his injury required surgery. Thus, though the rule is that some loss of wages is contemplated in the Workmen's Compensation Law, such general rule is not exclusive even under that statute and should not govern the construction of section 11-23 of the Syracuse City Ordinance which expressly limits benefits to a total period of six months for *one* disability. Special Term improperly relied on the Disability Benefits Law of New York (Workmen's Compensation Law, §§ 200-242) because its provisions are not parallel to those of the Syracuse Ordinance. To insist on either "medical" or "financial" impairment as the sole test to be applied in determining whether disability exists may produce an inequitable result. A fairer result is obtained when disability is determined by a proper balancing of the medical and wage-loss factors (2 Larson, Workmen's Compensation Law, § 57.10, p 10-5). Viewed in that light, it is undisputed that here there was only one accident, one injury, and, we conclude, one medical disability. Respondent's return to work under these circumstances should not serve to augment the benefits to which he is entitled absent language so providing in the ordinance itself. His further argument that section 11-23 should be construed, as in the case of a policy of insurance, favorably to him in case of doubt is misplaced because no doubt or ambiguity is found in the ordinance. The basic purpose of the ordinance is simply to compensate for lost wages. Syracuse has provided a generous plan and it should be fairly construed within its own purposes and limitations.

The judgment should be reversed and the petition dismissed.

MARSH, P. J., MAHONEY, DILLON and GOLDMAN, JJ., concur.

Judgment unanimously reversed, without costs, and petition dismissed.